JOURNAL ENTRY AND OPINION
{¶ 1} Willie Cason ("Cason") appeals his conviction after a jury trial in the Cuyahoga County Common Pleas Court. Cason argues that the State of Ohio presented insufficient evidence to support his conviction and that his conviction is against the manifest weight of the evidence. For the following reasons, we affirm the judgment of conviction.
 {¶ 2} At approximately 9:00 p.m. on September 8, 2004, Caressa Roberts ("Roberts") drove to 9800 Aetna to see her husband, Deonte Williams ("Williams"). At the time, Williams lived with his mother, Veronica Hall, and his brother, Morrio Green.
 {¶ 3} Williams opened the door for Roberts and she entered. However, before Williams could shut the door, two men forced their way into the house. Both of the men were dressed in black and carrying guns; one of the men wore a mask that covered his face. The two men, later identified as Isaac Thompson ("Thompson") and Cason, ordered both Roberts and Williams onto the ground. Also in the house were Williams' four nieces and nephews who were sleeping nearby; all the children were under the age of ten.
 {¶ 4} Roberts and Williams did as they were told and Cason, who was wearing the black mask, tied Roberts' hands behind her back with shoe strings. Cason patted down Roberts and removed her class ring, her engagement ring, and a cocktail ring. At the same time, Thompson pinned Williams to the floor and asked him "where the money at?" Thompson went through Williams' pockets, removed approximately $200, Williams' wrist watch and bracelet, and then tied his hands with string.
 {¶ 5} As Cason and Thompson were patting down Roberts and Williams, Williams' youngest nephew, A.B.,[1] sat up and started moving towards Williams. Thompson grabbed a couch cushion, told A.B. to lie down, and put the pillow over his head. Cason and Thompson then left the house through the front door.
 {¶ 6} Roberts and Williams got up and attempted to untie themselves. As they were doing so, Williams looked outside the window and saw Cason and Thompson walking towards a grey Cadillac that was parked in front of Williams' house. Williams recognized the vehicle as one belonging to Willie Brooks ("Brooks"), Cason's father. Williams also recognized the male sitting in the driver's seat as Brooks. Williams observed Cason and Thompson talking to Brooks as he remained seated inside the vehicle.
 {¶ 7} Suddenly, Cason and Thompson returned to the house, still carrying their handguns. Thompson ordered Williams back onto the ground and demanded money. Cason struck Roberts on the left side of her face with his handgun, knocking her to the ground. The two men then rummaged around the downstairs floor of the house. Cason ran upstairs, kicked in doors, and looked through the bedrooms. A few minutes later, Cason came back downstairs carrying a pillowcase full of items. Thompson told everyone to stay down on the ground and then he and Cason left the residence and entered Brooks' vehicle.
 {¶ 8} As Cason and Thompson left Williams' residence, Antonio Cason ("Antonio") called Brooks, his father, to pick him up from work. Brooks agreed and he, Thompson, and Cason drove to the McDonalds located on Broadway near East 65th. On the way to McDonalds, Thompson and Cason split up the items they stole in the robbery. At approximately 10:30 p.m., the vehicle arrived and Antonio got into the backseat with Cason. Antonio later testified that he observed some jewelry and a mask inside the vehicle. The men then proceeded to return to Cason and Antonio's residence at 9714 Aetna, two doors down from the scene of the robbery.
 {¶ 9} Police officers arrived at 9800 Aetna and began speaking with the victims. While doing so, police were notified that the Cadillac that had been parked outside of Williams' house during the robbery was on a nearby street. Officers stopped Brooks' vehicle and ordered the occupants out of the car. At the time of the stop, Brooks, Thompson, and Antonio were in the vehicle. Cason, who had spoken to his sister on the phone and learned that police officers were at 9800 Aetna, exited the vehicle at East 103rd and Dunlap.
 {¶ 10} Williams identified Brooks' Cadillac as the car parked outside of 9800 Aetna during the robbery, identified Thompson as the unmasked robber, and told police that he did not believe Antonio was the masked robber. Williams also identified the jewelry recovered from Brooks' car as belonging to him and his mother.
 {¶ 11} All three males were taken into custody. Police later released Antonio after they determined he did not participate in the robbery. Officers questioned Brooks who identified his son, Cason, as the masked robber. Brooks also told police that he, Thompson, and Cason had planned the robbery but claimed that he backed out at the last minute. On September 9, 2004, officers placed Cason under arrest. Cason denied any involvement in the robbery.
 {¶ 12} On September 22, 2004, the Cuyahoga County Grand Jury returned an indictment against Cason for the following charges: three counts of aggravated robbery with one — and three-year firearm specifications and repeat violent offender specifications, three counts of aggravated burglary with one — and three-year firearm specifications and repeat violent offender specifications, six counts of kidnapping with one — and three-year firearm specifications and repeat violent offender specifications, three counts of felonious assault with one — and three-year firearm specifications and repeat violent offender specifications, three counts of gross sexual imposition with one — and three-year firearm specifications, having a weapon while under disability, and possession of criminal tools.
 {¶ 13} Cason's jury trial commenced on March 28, 2005, on all charges except having a weapon while under disability, which Cason elected the trial court to hear. On March 31, 2005, the jury returned a guilty verdict on the following charges: two counts of aggravated robbery with the firearm specifications, three counts of aggravated burglary with the firearm specifications, six counts of kidnapping with the firearm specifications, felonious assault with the firearm specifications, and possession of criminal tools. The jury found Cason not guilty of one count of aggravated robbery, not guilty of two counts of felonious assault, and not guilty of three counts of gross sexual imposition. On the following day, the trial court noted that Cason stipulated to the prior conviction referenced in the charge of having a weapon while under disability. The trial court then found Cason guilty of having a weapon while under disability.
 {¶ 14} On May 16, 2005, the trial court sentenced Cason to a total prison term of eleven years. Cason appeals raising the two assignments of error contained in the appendix to this opinion.
 {¶ 15} In his first assignment of error, Cason argues that the state failed to present sufficient evidence to support his conviction. In his second assignment of error, Cason argues that his conviction is against the manifest weight of the evidence. Although these arguments involve different standards of review, we will consider them together because we find the evidence in the record applies equally to both.
 {¶ 16} The standard of review with regard to the sufficiency of the evidence is set forth in State v. Bridgeman (1978),55 Ohio St.2d 261 as follows:
"Pursuant to Criminal Rule 29(A), a court shall not order anentry of judgment of acquittal if the evidence is such thatreasonable minds can reach different conclusions as to whethereach material element of a crime has been proved beyond areasonable doubt."
 {¶ 17} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus, in which the Ohio Supreme Court held:
"An appellate court's function when reviewing the sufficiencyof the evidence to support a criminal conviction is to examinethe evidence submitted at trial to determine whether suchevidence, if believed, would convince the average mind of thedefendant's guilt beyond a reasonable doubt. The relevant inquiryis whether, after viewing the evidence in a light most favorableto the prosecution, any rational trier of fact could have foundthe essential elements of the crime proven beyond a reasonabledoubt." (Citation omitted.)
 {¶ 18} In evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the thirteenth juror, and intrudes its judgment into proceedings which it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury which has "lost its way." State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. As the Ohio Supreme Court declared:
"Weight of the evidence concerns `the inclination of thegreater amount of credible evidence offered in a trial, tosupport one side of the issue rather than the other.
 It indicates clearly to the jury that the party having theburden of proof will be entitled to their verdict, if, onweighing the evidence in their minds, they shall find the greateramount of credible evidence sustains the issue which is to beestablished before them. Weight is not a question of mathematics,but depends on its effect in inducing belief.'" Id. at 387.(Citation omitted.) "* * * `The court, reviewing the entirerecord, weighs the evidence and all reasonable inferences,considers the credibility of witnesses and determines whether inresolving conflicts in the evidence, the jury clearly lost itsway and created such a manifest miscarriage of justice that theconviction must be reversed and a new trial ordered. Thediscretionary power to grant a new trial should be exercised onlyin the exceptional case in which the evidence weighs heavilyagainst the conviction.'" Id., quoting State v. Martin(1983), 20 Ohio App.3d 172, 175.
 {¶ 19} However, this court should be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact, and a reviewing court must not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the state has proven the offense beyond a reasonable doubt. State v. DeHass (1967),10 Ohio St.2d 230, at paragraphs one and two of the syllabus. The goal of the reviewing court is to determine whether the new trial is mandated. A reviewing court should grant a new trial only in the "exceptional case in which the evidence weighs heavily against a conviction." State v. Lindsey, 87 Ohio St.3d 479,483, 2000-Ohio-465. (Citation omitted.)
 {¶ 20} The jury and the trial court found Cason guilty of fourteen charges consisting of aggravated robbery, aggravated burglary, kidnapping, felonious assault, having a weapon while under disability, and possession of criminal tools. These crimes are defined as follows:
 {¶ 21} R.C. 2911.01(A)(1) defines aggravated robbery:
"No person, in attempting or committing a theft offense, asdefined in section 2913.01 of the Revised Code, or in fleeingimmediately after the attempt of offense, shall * * * have adeadly weapon on or about the offender's person or under theoffender's control and either display the weapon, brandish it,indicate that the offender possesses it, or use it."
 {¶ 22} R.C. 2911.11(A)(1) and (2) defines aggravated burglary:
"No person, by force, stealth or deception, shall trespass inan occupied structure * * * when another person other than theaccomplice of the offender is present or likely to be present,with purpose to commit in the structure * * * any criminaloffense * * * if the offender inflicts, or attempts to inflictphysical harm on another, or the offender has a deadly weapon ordangerous ordnance on or about the offender's person or under theoffender's control."
 {¶ 23} R.C. 2905.01(A)(2) and (3) defines kidnapping:
"No person, by force, threat, or deception, or, in the case ofa victim under the age of thirteen or mentally incompetent, byany means, shall remove another from the place where the otherperson is found or restrain the liberty of the other person * * *for the purpose of facilitating the commission of any felony orthe flight thereafter or to inflict serious physical harm on thevictim."
 {¶ 24} R.C. 2903.11(A)(2) defines felonious assault:
{¶ 25} "No person shall knowingly cause or attempt to causephysical harm to another * * * by means of a deadly weapon orordnance."
 {¶ 26} R.C. 2923.13(A)(2) defines having a weapon while under disability:
{¶ 27} "* * * [N]o person shall knowingly acquire, carry oruse a firearm or dangerous ordnance if the person * * * has beenconvicted of a felony offense of violence * * *."
 {¶ 28} R.C. 2923.24 defines possession of criminal tools:
"No person shall possess or have under the person's controlany substance, device, instrument, or article, with purpose touse it criminally."
 {¶ 29} In support of these convictions, the State of Ohio presented the following evidence: Cason, Thompson, and Brooks planned to commit a robbery on September 8, 2004; Cason, Thompson, and Brooks dressed in black and gathered string; Cason and Thompson entered Williams' residence with handguns; Cason and Thompson tied Williams' and Roberts' hands behind their backs with string; Cason and Thompson pointed their handguns at Williams, Roberts, and the four children; Cason and Thompson ordered the four children to stay where they were lying; Cason and Thompson removed property from Williams and Roberts; Cason struck Roberts with the handgun he carried; Cason rummaged through the upstairs of the house, removing additional items that did not belong to him; Cason and Thompson split up the stolen items in Brooks' car; and Cason stipulated to a prior conviction of a felony offense of violence.
 {¶ 30} In response, Cason argues that the state failed to prove that he was the masked gunman who committed the crimes. This argument is without merit. Cason's father testified that he, Cason, and Thompson talked about committing a robbery, that he observed Cason and Thompson dress in black and get string, that Cason and Thompson left Williams' house, entered his car and split up jewelry. Additionally, Cason's brother Antonio testified that he observed Cason and a mask in the backseat of his father's vehicle.
 {¶ 31} Viewing this evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found all the elements of aggravated robbery, aggravated burglary, kidnapping, felonious assault, having a weapon while under disability, and possession of criminal tools. Therefore, the State of Ohio presented sufficient evidence to support his conviction.
 {¶ 32} Moreover, we also find that the trier of fact did not lose its way in convicting Cason of the abovementioned crimes. In support of his argument that his conviction is against the manifest weight of the evidence, Cason argues that his father's testimony is incredulous. The State of Ohio negotiated a plea arrangement whereby Brooks would serve a two-year prison sentence in exchange for testifying against his son. However, the State of Ohio presented this evidence to the jury, who chose to believe Brooks. Additionally, the testimony of Brooks was consistent with other witnesses' testimony.
 {¶ 33} Cason also points to minor inconsistencies in support of this assigned error. However, minor inconsistencies do not detract from the jury's result.
 {¶ 34} Accordingly, Cason's first and second assignments of error are overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Colleen Conway Cooney, P.J. And Anthony O. Calabrese, Jr., J.concur.
 Appendix Assignment of Errors:
 "I. The State failed to present sufficient evidence to sustaina conviction.
 II. Appellant's conviction is against the manifest weight ofthe evidence."
[1] This court protects the identity of all juvenile parties.